Good morning, Your Honors. May it please the Court, I'm Henry Huang, representing Mohamed Trawally, who petitions for review of the decision of the Board of Immigration Appeals, dismissing his appeal of immigration judges' denial of his applications for asylum withholding protection under the Convention Against Torture. I'm hoping to reserve about a minute or two. All right. I'd like to focus my remarks on three issues. The first, whether the issue of humanitarian relief was properly exhausted such that this Court has jurisdiction to consider the issue. Second, whether the Board's treatment of the humanitarian relief claim was adequate or an abuse of discretion. And third, whether the Board erred in finding that country conditions in Sierra Leone had changed. On the issue of exhaustion, the government contends in its brief that Mr. Trawally abandoned his claim for humanitarian relief, given that the issue was not briefed before the BIA. And cites to this Court's decision in the Abebe-Bumkesee. Now, in Abebe, this Court found that the Board is not required to consider an issue that Alien fails to properly raise in its brief, even if it was raised in the Notice of Appeal to the Board. However, just because the Board is not required to consider an issue that's not properly raised, it does not mean that it cannot consider the issue. And it did. Indeed. So this really, that overrides the normal rule, which is if you don't exhaust it and it's not considered by the Board, then it's waived, correct? Exactly. I mean, where the Board sui sponte considers an issue, it's basically deemed an issue sufficiently presented for whatever reason, such that actually, or where it actually considers it on the merits, such action by the Board exhausts the issue as far as the agency is concerned. And that's enough for this Court to exercise jurisdiction. Now, here we have the Board that just made the statement. It raised the issue and cited it to the appropriate regulation, and it said that relief was not warranted. And by doing this, the Board has signaled that it considered the issue. And this Court should take the Board at its word. And it should not assume that the Board meant something other than what it said, such as Mr. Trawley abandoned his claim. Now, the fact that the Board raised and considered this issue should not come as a surprise. As this issue was raised by Mr. Trawley in his notice of appeal to the Board, and it was further briefed to the immigration judge. Now, it also should be noted that the Board here issued a decision that was independent of the immigration judge's decision and reversed his adverse credibility finding. It found facts in its analysis of changed country conditions that were not mentioned at all by the immigration judge. And, of course, it raised this issue of humanitarian relief. Now, here that satisfies the policy concerns behind the exhaustion requirement, namely that the administrative agency should have the full opportunity to resolve a controversy or correct its own errors before judicial intervention. The Board here had the opportunity, and it took it. That this Court can now properly review the issue, whether it was raised to respond to it or otherwise, is consistent with this Court's decisions in Zagermark and Socal Gonzalez, and the Abib v. Gonzalez case from 2005. And this is further consistent with the majority of circuit courts, which have found that exhaustion concerns are satisfied where the BIA sua sponte considers an issue. A substantive decision by the Board on an issue, even a poorly considered one,  Now, while the issue of humanitarian relief was properly considered by the Board, or was considered by the Board, I should say, the sexual treatment of the issue was inadequate and warrants reversal. What should they have done that they didn't do? Item by item. Item by item. First, they generally, when the Board is issuing a decision, they must give the reasons for reaching that decision. I mean, while the grant of humanitarian relief is discretionary, the Board abuses discretion where it merely just repeats the petitioner's claim and summarily dismisses them without articulating any reasons for its decision. And that's exactly what the Board did here. It did not articulate. It cited the regulation. It said we're considering humanitarian relief and we're denying it. Right? That's right. In the normal course of trial work, if a judge says I hear your hearsay objection and I deny it, that's all you need to do. You don't have to say because I find whatever the ground is. You say there's a different rule as to immigration cases. Now I want to know why you think there's a different rule. Is it Lopez-Galarza? And if so, what was missing in the celebration as dictated by the BIA? Well, I think, first, the stakes are higher here. I believe that what we're talking about is humanitarian relief, which is offered when the past persecution is so severe that it's not reasonable to think that we should send this person back to the country. What should they have done that they didn't do? They should have looked at the actual harms that he suffered. Is there any indication they didn't? They said we've considered humanitarian relief. They cite the regulation and they say we deny it. Well, I think we have to go by what they said in their decision, which was they said nothing in terms of any sort of analysis between whether the harms reached the level of atrocity. They cited the regulation. They cited the regulation, but this court requires when the board is looking to the severity of past persecution that it has to see whether it rises to the level of atrocity that's required for humanitarian relief. And if they said we looked at the facts and it doesn't reach the level of atrocity, that would be enough? It would be closer. I still don't think that would be enough. I mean, there has to be enough so the court can think that the board has considered and provided some sort of meaningful appellate review. What is that meaningful? I mean, you say that it would be closer if they said it wasn't atrocity, but do they have to go into he was hung from a tree upside down and was forced to drink his urine and that is not atrocity under Chen? What do they have to say? I think that's what they would have to say. I think that they would have to- Have to recite the facts and find that the facts are dissimilar with where humanitarian relief has been granted and say why they're dissimilar? Or is that just comparing the facts enough? I think they would have to, yes, I think they would have to consider the facts. Not consider, recite the facts. Recite the facts. Sorry, yes, recite the facts and analyze it in terms that we could understand why it didn't rise to a matter of Chen or NMK. Not analyze it, but say what their analysis was in the decision. Yes, Your Honor. All right. Now, again, yes, there is no mention of the harms. And, I mean, I think that the harms are worth reviewing again. You know, Mr. Trewally was bound with his hands and legs. He was strung up a tree, hung upside down. He was beaten with a rubber instrument, with a gun. It left him bloodied and with scars in his arms and his legs. And it lasted 40 minutes after it stopped. Would you be satisfied that they listed all those things and said we've compared those to Lopez Galarza or to Chen and we find that it doesn't rise to the level of atrocity as we understand atrocity? I would expect the Board would at least raise some of the harms, some of the more serious harms that happened here. I mean, I think that this, when we're talking about humanitarian relief again, what we're talking about. I'm just trying to get you to tell me what would be sufficient detailing in the BIA decision to convince us that they had considered it. I think a recitation of the facts. And nothing else. Recitation of the facts, we don't think these facts add up to atrocity. I think that would have been. Okay. So it's something that says we took a serious look at it, exercised our discretion, and you still lose. We took a serious look at it. Or we took a look. We looked at the evidence, and there's no basis for discretionary relief here, period. Would that be enough? I don't think that would be enough. When we're talking about, again, just to come back to the severity of the harm and the consequences of returning a person, I think that I would expect more from the board. Well, you might expect more, but the question we have to decide is, does the law require more? Yeah, I think the law requires that you have some sort of meaningful judicial review of what the board says. I'm trying to get a content to that phrase. Right. It has to have something in it that we can know that they've actually meaningful considered it, thought about it, thought about the issue, and reacted. Now, I mean, I think it comes closer when they say, yes, we have thought about the facts seriously. Personally, I don't think that's quite enough either, but I do think they certainly need more than what they have written here. Thank you. Do you want to save your time? Yes, please. Thank you. May it please the court. My name is Edward Wiggers. I represent the respondent in this matter. The end of the conflict in Sierra Leone, the government's reassertion of control there, the prosecutions of the RUF leaders and the RUF's insignificant presence after the conflict constitutes substantial evidence that supports the board's conclusion that conditions in Sierra Leone had changed sufficient to negate petitioner's claim of a well-founded fear of persecution. If a petitioner makes a valid, timely claim for humanitarian relief and establishes a factual basis for it, and let's throw in that the person was deemed credible in their testimony and satisfied the burden of establishing that what happened to them was so severe that they should not be returned to the country of origin, do changed country circumstances matter? Not as much in your scenario, Your Honor, because the purpose of the grant of humanitarian asylum is when the past persecution has been so severe that it lessens the need for a fear of future persecution. And that's the reason why the presentation of a claim, of a developed claim for humanitarian asylum to the board for the board's consideration is so essential because it's such a discretionary arena. And in this case, while petitioner referenced it, he did no more than reference it essentially in passing. Well, but let's start there. He referenced it in his notice of appeal and the BIA dealt with it, right? Yes, Your Honor. So exhaustion argument is out the door. Traditionally exhaustion, yes, Your Honor, is out the door. Okay. But if the BIA had said passing reference without argument doesn't provide us a basis to make a discretionary decision and we deny relief, that would be one thing. But instead they just said it's not warranted in this case, period. How can we determine whether that discretion, whether discretion has been exercised when there's such a bald, it's sort of like what we, you know, sometimes call the postcard denial. Yes, Your Honor. The problem is petitioner didn't give the board anything to consider in depth when he presented his case to the board. But how do we know that's the reason that the board said no? I mean, the board, if the board told us that, we might say, yeah, it turned out he really didn't put enough forward. But we just don't know. That's true, Your Honor. And the abandonment issue is not necessary to respondant's position in this case. However, we would maintain that in a humanitarian asylum case, the failure to present a developed claim to the board's consideration, at the very least, should foreclose any argument that the board rendered an inadequate depth of analysis. Well, it's not developed about a humanitarian claim when they hung the man upside down and forced him to drink urine. The scope of the case. The facts are in there, aren't they? The facts are in the record, Your Honor. And to get to your points raised during the petitioner's presentation of his argument, all those facts were before the board, and there is nothing to indicate the board did not consider them. And the board, didn't the board determine that the IJ's adverse credibility determination was not supported by competent evidence? The board determined the adverse credibility determination was not supported by sufficient specific and cogent reasons. That sounds like a yes. That sounds like a yes to my question. Almost, Your Honor. Specific and cogent reasons, not so much that the evidence wasn't there, the IJ didn't elucidate it sufficiently for the board to sustain. So with that as a predicate, do we assume that the board considered the testimony to be truthful? Yes, Your Honor. In fact, the board, I believe, said as much on the second page of its decision when it says, crediting his testimony, we nevertheless conclude that the respondent petitioner now is ineligible for asylum. So the board reviewed all of these contentions, and if the court were to go so far as to compare them to the matter of Chin, where the alien's father had been thrown on a bonfire of burning Bibles and dragged through the street more than 50 times, and the alien himself. That would be great if they said, this isn't like Chin. There's not enough here denied. We don't know why it was denied. We're sort of in this case where it sometimes comes up with the district court where they're supposed to exercise discretion, and like the board, we give it huge deference. But if we don't know on what basis the discretion was exercised, how do we say reasonable and a substantial basis for exercising the discretion? It's really just kind of a, you know, they may well come to the conclusion you're saying because it's not like Chin and it's bad, but it's not as bad as when they decide to exercise their discretion. But we don't even have one reason. Well, the reason, Your Honor, was the facts as Petitioner presented to the immigration judge. How do we know that? How do we know? All we know is it says denied. It may be because the immigration judge, the BIA might have said he parted his hair on the wrong side, therefore denied. Well, Your Honor, they said that humanitarian asylum was not warranted, and the standard for humanitarian asylum is essentially embodied in the Chin case and the cases that have followed it, and the board was reviewing the facts that Petitioner presented to the immigration judge. So for humanitarian asylum... There's a presumption that when they say not warranted, we have to presume that they did go through the thinking process of comparing what happened to this man compared to what happened to Chin. Yes, Your Honor, at least under... Do you have a case that says that that presumption changes the Lopez-Galarza case? I do not, Your Honor. However, given the presumption of regularity in the agency proceedings, it would be fair to presume that the board knows its precedents and knows how to apply them to a given factual situation, which is what it did here. This is a pre-Real ID case, isn't it? I'm sorry. Yes, Your Honor. Does that make any difference? No, Your Honor. Well, we have cases way before Lopez-Galarza that basically say you have to give a reason. You have to give some reason. If you don't give a reason, then that is, per se, an abuse of discretion. So we've had those cases for a long time. What do we do with those? Well, Your Honor, the reason the board gave in this case is that humanitarian asylum relief was not warranted. The only basis for that statement is that his facts are not sufficiently atrocious to rise to the level for humanitarian asylum. The hold to the contrary would be essentially holding that the board is incapable of following its own precedents and applying them to facts without specific explicit statements in its decision, which would be running afoul of all the precedent out there, establishing that the board is not required to write an exegesis on every contention, especially in the context of one where Petitioner never presented a developed argument on a highly discretionary issue. So we're back to what the board has to say is relief is not warranted in this case, period. And it could say that on all of the claims. I'm focusing specifically on the humanitarian asylum claim, Your Honor, for that's where the board did this. In the context of humanitarian asylum, a statement that it's not warranted, which must necessarily embody an assessment of the facts and an application to the well-established discretionary standard for humanitarian asylum, is sufficient for the board to have declared its decision and for that to be sufficient for this court to review. And regarding the harm that Petitioner suffered, while he was held for 17 days, beaten twice a day, and all the related conduct that he had to undergo, he was still capable after that 17-day period of overpowering the guard and running away. No, but we can't see. That's what you'd argue to the BIA in your brief. And one thing I wonder is why do we have all these cases that come up here like this when it would be a simple matter, you know, for it to go back to the BIA to get a reason, like the one you're saying, but that's not something we can impute. Your Honor, under the substantial evidence standard, the record must compel the conclusion that Petitioner is seeking. With that evidence in the record, it does not compel that conclusion. And to your point about why the board isn't doing this, it's probably a simple question of economy for the same reason they have their streamlining procedures. They're trying to move cases and keep up. Well, that didn't work out so well either. So, I mean, we can't just say because they want to process these through in large numbers. I mean, they need to give us something to review, and then we're happy to review the 4,000 to 7,000 immigration cases we get every year, which we do. But as we've said here, we have this case on Lopez-Galarza, and I'm just hard-pressed to figure out how we get around that to come to your conclusion. Maybe there's another way to do it. I don't know. Your Honor, the board has said that the evidence Petitioner presented is not sufficient to meet this requirement. By saying it's not warranted. No, it didn't deal with the evidence at all. It made a conclusory statement. It's not warranted. But we don't know whether it's not warranted because you've got the wrong attorney, because I don't like your suit. It's not warranted. We don't know. If I may reply, Your Honor, for my time has expired. Please do. In a situation where it is a purely discretionary ground for relief, where it is entirely upon the burden of the alien to convince the board that it's the right thing to do to grant humanitarian asylum at a level lower than the statutory requirement, and where the alien has presented no contention, and where the facts on the record are clear, and the board states that based on the record, they haven't come out and used the magic words based on the record presented, but there is not necessarily a requirement for magic words in the board's decision. The board has said, based on what we have in front of us, and a favorable exercise of discretion on Petitioner's behalf under the humanitarian asylum standard is not warranted. That is a sufficient basis for this court to review the decision in light of the fact that the record is before the court and the humanitarian asylum standard, discretionary as it is, is also before the court. And all the board's decision need do is afford the court with something sufficient for it to review the basis of the board's determination. While the board did not use any magic language in its opinion, it did give this court something to review. These facts don't warrant humanitarian asylum. And, Your Honor, subject to any further questions, that would conclude our presentation. Thank you. We have a short time left for rebuttal. One minute. I'll be very quick. The DHS is correct that the board is not obliged to write an exegesis on every contention. And in its brief, it says as much. The authority that it uses for this proposition is Gutierrez-Almazan from the Seventh Circuit and Garcia-Gomez from this court. Interestingly, in both those decisions, the court's reviewed board denials of motions to file untimely briefs. And in both cases, the board's decision stated, we find the reasons stated by the respondent insufficient for us to accept the untimely brief and our exercise of discretion. Now, that compared with what they said here. In both those cases, the courts found that the board abused its discretion because that sentence did not permit any sort of meaningful judicial review. And that is similar to what has happened here. The board did not say that based on the evidence. It just said that humanitarian relief was not warranted. If I may very quickly on the country conditions in Sierra Leone. The board did err in its analysis of this issue. While the board did offer some general facts about the state of Mr. Crawley's political party, it did not provide the individualized analysis that this court requires. Did you argue about changed country conditions in your opening argument? No, I didn't. I brought up the issue. Is it appropriate to bring it up in reply if you didn't? Oh, sorry. In my brief before the court, I did. No, no, no. When you argued the first time, you stood up. Oh, no, I did. Did you discuss that? No, I did not. You mentioned country conditions, but you didn't get to it. I did not. I did not argue. Thank you. Okay, thank you. The case just argued to all of the holder is submitted.
judges: Hawkins, McKeown, Bea